```
          IN THE UNITED STATES DISTRICT COURT
             WESTERN DISTRICT OF ARKANSAS
                   EL DORADO DIVISION
```

ANTHONY D. HARRIS                                          PLAINTIFF

      v.             Case No. 1:13-CV-1043

WILLIAM COOPER, Individually and
as a member of the 13th Judicial District
Drug Task Force; STEVEN JERRY, Individually and
as a member of the El Dorado Police Department;
MICHAEL BLAKE, Individually and as a member of
the El Dorado Police Department; JOHN MILLER,
Individually and as a member of the El Dorado
Police Department; and ANGELA MEANS, Individually
and as a member of the El Dorado Police Department   DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Currently before the Court are Separate Defendant William Cooper's ("Cooper") Motion for Summary Judgment and supporting materials (docs. 40-42); Plaintiff's Response and supporting materials (docs. 50-52); Cooper's Replies (docs. 59-60); Plaintiff's Supplemental Response and supporting brief (docs. 71-72)[1]; Cooper's Reply to Plaintiff's Supplemental Response (doc. 73); Separate Defendants Michael Blake, John Miller, Steven Jerry and Angela Mean's ("Police Defendants") Motion for Summary Judgment and supporting materials (docs. 43-45); Plaintiff's Responses[2] and supporting materials (docs. 53-56);

---

[1] Without leave and untimely, Plaintiff filed a Supplemental Response in opposition to Separate Defendants' motion for summary judgment (doc. 71) on March 19, 2014.  Cooper filed a Reply (doc. 73) on March 20, 2014.
[2] CM/ECF Document 53 is "Plaintiff's Response to Separate Defendants' Motion for Summary Judgment" and CM/ECF Document 56 is "Separate Defendants' Response to Plaintiff's First Statement of Undisputed Facts".

Police Defendants' Reply[3] and supporting brief (docs. 57-58); Police Defendants' Reply (doc. 58); Plaintiff's First Motion in Limine (doc. 63), Cooper's Response and supporting brief (docs. 66-67); Plaintiff's Second Motion in Limine (doc. 64), Plaintiff's Third Motion in Limine and supporting brief (docs. 69-70); Cooper's Response and supporting brief (docs. 77-78); and Police Defendants' responses to Plaintiff's motions in limine and supporting brief (docs. 74-76).

For the reasons set out below Cooper's Motion for Summary Judgment (doc. 40) is GRANTED; Police Defendants' Motion for Summary Judgment (doc. 43) is GRANTED; Plaintiff's motions in limine (docs. 63-64, 69) are DENIED as moot.

**I.  Background**

Plaintiff brings suit under 42 U.S.C. § 1983, 42 U.S.C. § 1985, the 4th, 5th, 8th and 14th Amendments to the United States Constitution alleging that on June 7, 2011, his residence was searched without a warrant and that he was arrested on that date without probable cause and without a warrant.  (Doc. 36).[4] Plaintiff seeks relief in the form of declaratory judgment, injunctive relief, wage loss, compensatory damages, and for fees

---

[3] CM/ECF Document 57 is "Separate Defendants' Reply to Plaintiff's Response to Separate Defendants' Statement of Undisputed Material Facts and Response to Plaintiff's Second Statement of Undisputed Facts".  (Doc. 57).
[4] Plaintiff filed his original complaint on May 6, 2013 (doc. 1), his First Amended Complaint on June 26, 2013 (doc. 24), and his Second Amended Complaint (doc. 36) on January 14, 2014.

and costs.

On January 15, 2014, Cooper filed his Answer and denied the allegations of wrongdoing and asserted various defenses. (Doc. 38). On January 22, 2014, Police Defendants filed their Answer and denied the allegations of wrongdoing and asserted various defenses. (Doc. 39).

On January 30, 2014, Cooper filed his motion for summary judgment contending: (1) despite the fact that Plaintiff was misidentified as a resident of building "LJ" after his arrest in the search warrant return and affidavit of probable cause, Defendants had a search warrant for his residence in "LL", Defendants had an arrest warrant, and even without an arrest warrant, probable cause existed; (2) the official capacity claims fail because there is no allegation of any alleged custom or policy of the 13th Judicial District Drug Task Force; and (3) he is entitled to qualified immunity. (Doc. 40).

On January 30, 2014, Police Defendants filed their motion for summary judgment contending: (1) there was a valid search warrant for Plaintiff's address and a FNU/LNU[5] (John Doe) warrant for Plaintiff's arrest; and (2) they are entitled to qualified immunity. (Doc. 43). The parties filed their responses and replies and the motions are ripe for consideration. (Docs. 50-

---

[5] FNU/LNU is shorthand for First Name Unknown/Last Name Unknown, and may be followed with a descriptive shorthand, to include B/M for Black/Male.

60, 71-73).

## II. Standard of Review

In determining whether summary judgment is appropriate, the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Nat'l. Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999). The Court must review the facts in a light most favorable to the party opposing a motion for summary judgment and give that party the benefit of any inferences that logically can be drawn from those facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212-13 (8th Cir. 1998) (*citing Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983)).

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in *Rule 56*, must set forth specific facts showing that there is a genuine issue for trial. *Ghane v. West,* 148 F.3d 979, 981 (8th Cir. 1998) (*citing Burst v. Adolph Coors Co.,* 650 F.2d 930, 932 (8th Cir. 1981)). In order for there to be a genuine issue of material fact, the non-moving party must

produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (*quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). Furthermore, "[w]here the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1315 (8th Cir. 1996) (*quoting Crain v. Bd. of Police Comm'rs,* 920 F.2d 1402, 1405-06 (8th Cir. 1990)).

**III. Uncontroverted Facts**

The following facts, unless noted otherwise, are deemed uncontroverted and are viewed in a light most favorable to the non-moving party.

1. As a result of a several months long undercover investigation[6], Cooper, an officer with the 13th Judicial District Drug Task Force at the time, obtained search warrants for several of the apartment buildings in the South Roselawn Street Apartments in El Dorado, Arkansas. (Doc. 42 at ¶ 4).
2. Operation Bee Swarm targeted drug activity by multiple individuals using multiple residences located at the South Roselawn Street Apartments.
3. Specifically, Cooper obtained search warrants for Plaintiff's apartment, "LL" and a vacant apartment "LJ", which was connected to several controlled drug buys, including one in which the Plaintiff was later identified as a suspect. (Doc. 42 at ¶ 5).
4. Cooper also obtained a FNU/LNU arrest warrant for an unknown individual associated with these controlled drug buys, later identified as Plaintiff. The description in the controlled drug buy attributed to Plaintiff in the Probable Cause Affidavit matches the description of the

---

[6] The investigation was nicknamed Operation Bee Swarm. (Doc. 44 at ¶ 2)

controlled buy in the Affidavit for Warrant of Arrest. (Id. at ¶ 6).
5. On May 23, 2011, Cooper swore out an affidavit for Search Warrant for building "LL" in front of Union County Circuit Court Judge Michael R. Landers. (Doc. 41, Att. 1).
6. On May 23, 2011, Judge Landers issued a Search Warrant for building "LL". (Doc. 41, Att. 2).
7. Building "LL" is a one-bedroom suite and contained only one residence. (Doc. 44 at ¶ 4).
8. Cooper also swore out affidavits for buildings "LJ" and "LM", and search warrants and search warrants returns were also issued and executed. (Doc. 41, Atts. 1-7,9).
9. Plaintiff was arrested in relation to a drug raid on June 7, 2011, by Cooper, who was assisted by City of El Dorado Police Officers Michael Blake, John Miller, and Steven Jerry. (Doc. 42 at ¶ 4; Doc. 44 at ¶ 1).
10. Plaintiff was arrested in building "LL" and building "LL" was searched. (Doc. 44 at ¶ 5).
11. Plaintiff contends that Cooper did not have with him at the time of the search the search warrant for building "LL". Cooper contends he had the valid search warrant for building "LL" with him at the time of search.
12. At the time of his arrest, Plaintiff resided at 201 South Roselawn, building "LL" in El Dorado, Arkansas.
13. Plaintiff was arrested and found to be in the possession of, among other things, a prescription bottle without his name containing thirteen (13) Darvocet pills. (Doc. 42 at ¶ 8).
14. Possession of a controlled substance without a prescription is a Class C Felony. Ark. Code. Ann. § 5-64-403.
15. Plaintiff was booked into the Union County Detention Center and charged with one (1) count of delivery of a controlled substance, possession of a controlled substance without a prescription, and maintaining a drug premises. (Doc. 42 at ¶ 10).
16. The Search Warrant Return states that Cooper received the search warrant on May 18, 2011, at 8:42 am and the building searched was building "LJ" and that the single item inventoried is "WC-E-1 A prescription bottle containing 13 Darvocet pills." (Doc. 36, Att. 3).
17. A Search Warrant Return states that building "LL" was searched and no evidence was found or taken from the residence. (Doc. 41, Att. 3).
18. The Affidavit for Warrant of Arrest and the Warrant for Arrest were for the person later identified as Anthony Harris. (Doc. 44 at ¶ 12).
19. The arrest report of Plaintiff indicates the location to be

"Building LJ, South Roselawn Street, El Dorado AR", and that both a search and arrest warrant were served. The narrative states "[o]n 6/7/11 at 7:10 a.m. Deputies from the USCO, Officers from the EL (sic) Dorado Police Department, assisted with DTF in the Search and Arrest Warrants for Anthony D. Harris and his apartment building LJ. Found in Harris's possession was a prescription bottle of 13 Darvocet pills without Harris's name on it. Harris was placed into custody, and transported to the UCSO, where he is being held for 1st appearance on 6/8/2011 at 0130 hours." (Doc. 41, Att. 17).

20. The Affidavit of Probable Cause as to Anthony D. Harris, is dated June 8, 2011, and identifies Plaintiff as the unknown individual described in the control buy conducted on April 13, 2011, in front of building "LJ". The affidavit further states that on June 7, 2011, search and arrest warrants were executed for "FNU/LNU" and "his apartment building LJ". (Doc. 41, Att. 15).
21. On June 8, 2011, Plaintiff was charged with: (1) Delivery of a Controlled Substance, (2) Maintaining a Drug Premises, and (3) Possession of a Controlled Substances Without a Prescription. (Doc. 41, Att. 20).
22. On November 3, 2011, an order of nolle pros in the case of State of Arkansas v. Anthony D. Harris, CR-2011-378-4, was entered. (Doc. 41, Att. 21).
23. The Police Defendants were not involved in the investigation that led to the issuance of the search warrants or arrests warrants. (Doc. 44 at ¶ 13).
24. The Police Defendants involvement in this matter began only after the issuance of the aforementioned search and arrest warrants. (Doc. 44 at ¶ 14).
25. The Police Defendants (excluding Means) only alleged involvement in this matter was that they assisted with Cooper in the arrest of Plaintiff. (Id. at ¶ 15).
26. Means only involvement in this matter is her alleged identification of "Anthony Harris: (1) as being the person depicted in a photograph and (2) as being the person in Cooper's custody sometime shortly after Plaintiff was arrested by Cooper. (Doc. 44 at ¶ 16).
27. Cooper's position is that the Search Warrant Return for building "LL" is the one identified as being for building "LJ". Similarly, the Search Warrant Return for building "LJ" is the one identified as being for building "LL". The error in the mislabeling the search warrant returns is reflected in the erroneous reporting that Plaintiff was arrested in and the Darvocet pills were seized from building "LJ", whereas Plaintiff was actually arrested and

the contraband seized in building "LL".

## IV. Discussion

Plaintiff brings suit against defendants under § 1983 for violations of his Fourth, Fifth, Eighth and Fourteenth Amendment rights. Plaintiff also brings suit under § 1985 for conspiracy to interfere with his civil rights.

### A.   42 U.S.C. § 1983 - Individual Capacity Claims

Qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or Constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800 (1982). "Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986). Law enforcement officers, as government officials, have qualified immunity from liability in their individual capacity unless they violate a clearly established right of which a reasonable person would know. *Harlow,* 457 U.S. at 818-19.

"To determine whether an official is entitled to qualified immunity, we ask two questions: (1) whether, after viewing the facts in the light most favorable to the party asserting the injury, there was a deprivation of a constitutional right; and, if so, (2) whether the right was clearly established at the time

of the deprivation such that a reasonable official would understand his conduct was unlawful in the situation he confronted." *Vaughn v. Greene County, Arkansas*, 438 F.3d 845, 850 (8th Cir. 2006). To survive a summary judgment motion based on qualified immunity, a plaintiff must assert a violation of a constitutional right, show that this right is clearly established, and raise an issue of material fact as to whether the defendant would have known that the conduct in question violated the clearly established right." *Brockinton v. The City of Sherwood, Arkansas, et al.*, 2006 WL 2401322 (E.D. Ark.) (*citing Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir. 1996). The initial inquiry is whether the facts as alleged show that the officers' conduct violated a constitutional right. *Brokinton v. City of Sherwood, Arkansas*, 503 F.3d 667, 672 (8th Cir. 2007) (*citing Scott v. Harris*, 550 U.S. 372, 377 (2007). If the facts do not show a violation, we need not proceed further with the qualified immunity analysis. *Id.* (*citing Saucier v. Katz*, 533 U.S. 194, 201 (2001).

    **i.   Search**

Plaintiff claims Cooper and the Police Defendants (excluding Means) violated his Fourth Amendment rights[7] when they executed a search warrant at his apartment in building "LL" with

---

[7] Plaintiff does not respond to the defendants' challenges to his Fifth, Eighth and Fourteenth Amendment, and 42 U.S.C. § 1985 claims. Rather, in his responses Plaintiff solely addresses allegations of violations of his Fourth Amendment rights. (Doc. 45, 58).

a search warrant for building "LJ". (Doc. 51 at 2).

The uncontroverted fact is that there was a valid search warrant for building "LL". The fact that the post-arrest documents erroneously indicate Plaintiff to be a resident of building "LJ" as opposed to "LL" neither renders the search warrant for building "LL" invalid nor the defendants' conduct a violation of Plaintiff's rights. Plaintiff's position is the search was unconstitutional because the defendants did not have in their physical possession the search warrant for building "LL" at the time of the search[8]. Plaintiff fails to cite, and the Court does not find, any authority for the proposition that failure to physically have a search warrant at the time of execution renders the search unconstitutional.

Rather, the Court finds the Federal Rules of Criminal Procedure does not impose an inflexible requirement of prior notice based on the circumstances of the case[9]. Although "Rule 41[(f)] does require federal officers to serve upon the person search a copy of the warrant and a receipt describing the material obtained, . . . it does not invariably require that this be done before the search takes place." *Katz v. United*

---

[8] Plaintiff does not dispute that a valid search warrant for building "LL" had been issued at the time of the search.

[9] Notwithstanding the Court's finding that the Fourth Amendment and Federal Rules of Criminal Procedure controls the search at issue, the Court finds the Arkansas Rule of Criminal Procedure 13.3 would permit the executing officers flexibility in furnishing a copy of the search warrant after the search based on the uncontroverted description that the search was a part of "raid".

*States*, 389 U.S. 347, 356 n.16 (1967); *see e.g., United States v. Woodring*, 444 F.2d 749, 751 (9th Cir. 1971) (police officer searched house after learning over police radio that a search warrant had issued and was on its way to the premises and warrant arrived an hour and a half after search started); *United States v. Porter*, 654 F.Supp.2d 938, 943 (E.D. Ark. 2009) (*citing United States v. Grubbs*, 547 U.S. 90, 99 (2006) (holding the Fourth Amendment, not the Arkansas Rules of Criminal Procedure, controls the search and that the Fourth Amendment and the Federal Rule of Criminal Procedure 41 do not require the executing officers to show the warrant before conducting the search); *United States v. Hepperle*, 810 F.2d 836, 839 (8th Cir. 1987) (holding that "law enforcement officials are not constitutionally required to present a copy of the search warrant prior to commencing a search[.]").

Plaintiff also claims Means violated his rights by identifying him as a drug dealer prior to his arrest, at the arrest scene and from a photograph shown by Cooper. (Doc. 36 at 4; Doc. 53 at 1). Although Means does not recall making the identification, assuming arguendo that she did, the fact is not material because Means would have made the identification after the warrants had been issued (because the Police Defendants were not involved in the investigation of Operation Bee Swarm). (Doc. 44 ¶ 14). Contrary to Plaintiff's contention, Means's

identification did not influence his arrest and therefore Means' conduct did not violate Plaintiff's constitutional rights.

The Court finds Plaintiff fails to show the search of his residence in building "LL" violated his constitutional rights and therefore the defendants are entitled to qualified immunity on this claim.

### ii. False Arrest

Second, a claim of false arrest brought pursuant to § 1983 fails if the officer had probable cause to make the arrest. *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001). Probable cause exists if "at the moment the arrest was made . . . the facts and circumstances within [a police officer's] knowledge and of which [the officer] had reasonably trustworthy information were sufficient to warrant a prudent man in believing" that the person arrested committed the crime with which he was charged. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Plaintiff claims the defendants had no probable cause to arrest him; however, the uncontroverted fact is Plaintiff was found in possession of thirteen (13) Darvocet pills, a controlled substance, without a prescription in violation of Ark. Code Ann. § 5-64-403. Plaintiff's possession of the contraband provided probable cause to arrest him. The Court finds Plaintiff cannot show his arrest violated his constitutional rights and therefore the defendants are entitled to qualified immunity on this claim.

Plaintiff has failed to show the defendants' conduct violated a constitutional right and therefore his claims against them in their individual capacities are DISMISSED WITH PREJUDICE.

### B.   42 U.S.C. § 1983 - Official Capacity Claims

The claims against the Police Defendants and Cooper in their official capacities are deemed to be claims against the city of El Dorado and the six counties that comprise the 13th Judicial District[10].  *See Liebe v. Norton*, 157 F.3d 574, 578-79 (8th Cir. 1998).  In a § 1983 action, a municipality may only be held liable for constitutional deprivations if the deprivation is the result of a policy or custom of the municipality.  *Id*.  A complaint that fails to allege that a constitutional injury was the result of an official policy or widespread custom of the municipality is "insufficient, on its face, to state a claim" against the municipality.  *Springdale Educ. Assn. v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998).

Plaintiff's Second Amended Complaint does not allege that any constitutional injury was the result of an official policy or widespread custom of the cities and counties.  The complaint is thus insufficient, on its face, to state a claim against the city and counties.  *See, e.g., Sanders v. Sears, Roebuck & Co.*,

---

[10] The 13th Judicial District is comprised of Calhoun, Cleveland, Columbia, Dallas, Ouachita, and Union Counties.  13th Judicial District of Arkansas, http://www.arkprosecutor13.com/index.htm (last visited April 9, 2014).

984 F.2d 972, 976 (8th Cir. 1993) (dismissal affirmed on grounds that plaintiff failed to plead that defendant had a policy or custom of false arrest or malicious prosecution); *Baxter by Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 735-36 (7th Cir. 1994) (dismissal of county school corporation proper when complaint failed to adequately allege policies or customs on part of corporation).

Plaintiff has not properly alleged a claim against the city of El Dorado or the 13th Judicial District and therefore Plaintiff's § 1983 claims against the Defendants in their official capacities are DISMISSED WITH PREJUDICE.

**C.   42 U.S.C. § 1985 Claims**

Section 1985(3) entitles a plaintiff to money damages when two or more persons act in furtherance of a conspiracy, "whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States."  42 U.S.C. § 1985(3) (2005).  Regarding the claim, "[t]he plaintiff must show that the conspiracy is fueled by some 'class-based, invidiously discriminatory animus.'" *Andrews v. Fowler*, 98 F.3d 1069, 1079 (8th Cir. 1996) (*quoting Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993).

Although Plaintiff alleges in his Second Amended Complaint this Court has jurisdiction pursuant to 42 U.S.C. § 1983, he

sets out no facts to support a conspiracy. (Doc. 36.) Moreover, there are no allegations suggesting that any acts by the defendants were motivated by a "class-based, invidiously discriminatory animus." *Andrews v. Fowler*, 98 F.3d. 1069, 1079. Plaintiff has not properly alleged a claim under § 1985 and therefore this claim is DISMISSED WITH PREJUDICE.

**III. Conclusion**

For the reasons set out above Separate Defendant William Cooper's Motion for Summary Judgment (doc. 40) is **GRANTED**; Separate Defendants Michael Blake, John Miller, Steven Jerry and Angela Mean's Motion for Summary Judgment (doc. 43) is **GRANTED**; Plaintiff's motions in limine (docs. 63-64, 69) are **DENIED as moot.** Plaintiff's Second Amended Complaint (doc. 36) is **DISMISSED WITH PREJUDICE.** The pretrial conference set for Monday, April 14, 2014 at 3:00pm is **CANCELED,** and the jury trial set to begin Tuesday, April 15, 2014 at 9:00am is **CANCELED.**

IT IS SO ORDERED this 9th day of April, 2014.

<u>/s/ Robert T. Dawson</u>
Honorable Robert T. Dawson
United States District Judge